UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Continental Western Insurance
Company

    v.                              Civil No. 15-cv-006-JD
                                   Opinion No. 2015 DNH 194
Opechee Construction
Corporation, et al.

O R D E R

Continental Western Insurance Company ("Continental") brings a subrogation action against the general contractor, Opechee Construction Company ("Opechee"), that built the Hampton Inn in Dover, New Hampshire ("the hotel"), and two plumbing subcontractors, North American Plumbing & Heating, LLC and Linx Ltd.  The claims arise from extensive water damage at the hotel caused by a pipe failure.  Opechee moves for summary judgment on the ground that a waiver of subrogation provision in the construction contract bars Continental's claims, and North American Plumbing & Heating, LLC has joined the motion.  Continental objects.

Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Santangelo v. New York Life Ins. Co., 785 F.3d

65, 68 (1st Cir. 2015).  "A genuine issue is one that can be resolved in favor of either party and a material fact is one which has the potential of affecting the outcome of the case." Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 16 (1st Cir. 2013) (quoting Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 25 (1st Cir. 2011).  In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant.  Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012) (internal citations omitted).

When the party moving for summary judgment bears the burden of proof at trial, the movant "cannot prevail unless the evidence that he provides on that issue is conclusive." E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002) (internal quotation marks omitted).  Evidence is conclusive when the moving party's showing is sufficient to preclude any reasonable trier of fact from finding against it.  Id. (citing Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986)).

That standard applies here because waiver is an affirmative defense, see Fed. R. Civ. P. 8(c)(1), and the burden of proving it is on Opechee.  Balamotis v. Hyland, 159 N.H. 803, 811 (2010) (party using affirmative defense of release bears burden of

proof); Gianola v. Cont'l Cas. Co., 149 N.H. 213, 214 (2003) (party using waiver defense bears burden of proving it).

## Background

In September of 2006, Opechee and the hotel's owner, Lafrance Bowden Hospitality, LLC ("Lafrance"), entered into a written contract (the "Agreement") governing the construction of the hotel. Lafrance and Opechee drafted the Agreement by modifying an Associated General Contractors ("AGC") form agreement, entitled "Standard Form of Design-Build Agreement and General Conditions Between Owner and Contractor."

One of the provisions that Lafrance and Opechee modified in the form AGC agreement was a waiver of subrogation provision. That waiver of subrogation provision (the "Waiver"), as modified, provides in pertinent part:

> The Owner waives subrogation against the Contractor . . . under property and consequential loss policies purchased for the Project after its substantial completion.

Defendant Opechee Construction Corp's Motion for Summary Judgment, Agreement (Ex. B), at ¶9.6.3.

The Agreement also provided that Opechee had "about 12 months" to achieve "substantial completion," which was the date when Lafrance could "occupy or utilize the Project . . . for the use for which it [was] intended." See Agreement, at ¶¶5.1, 5.2. Upon substantial completion, Lafrance and Opechee were to sign a

Certificate of Substantial Completion which would include, among other things, a "punch list" identifying any outstanding items that Opechee had to complete before finishing the project. Paragraph 8.4 permitted Opechee to seek "the unpaid balance of the Project" at substantial completion, except for 150% of the estimated cost of the items on the punch list.  Lafrance was not required to pay the amount retained for each punch list item until Opechee had completed that item.

There is no dispute that Opechee substantially completed the hotel in July of 2007, that Opechee then issued a Certificate of Substantial Completion which included a punch list, and that Lafrance made final payment to Opechee in December of 2007.

Nearly six years after the final payment, a pipe flange in the hotel's mechanical room separated from a vertical pipe, causing flooding throughout the building.  As a result of the flooding, the hotel sustained substantial damage.  At the time, Lafrance held a "businessowners" insurance policy that it had purchased from Continental at some time after substantial completion.  Under the terms of the policy, Continental paid Lafrance $3,777,252.22 for the damage sustained during the flooding.  Continental, as subrogee for Lafrance, brings tort and contract claims against Opechee, North American Plumbing and

Heating, LLC, and Linx Ltd., alleging that they improperly designed, installed, or manufactured the pipe flange during the hotel's construction.

## Discussion

Opechee moves for summary judgment on the ground that the Waiver in the Agreement bars Continental from bringing suit as the subrogee of its insured, Lafrance. Continental objects, arguing that its claims are not barred because the Waiver only applies to claims covered by insurance policies that were in effect during the hotel's construction, not to policies covering the functioning hotel. Alternatively, Continental argues that even if the subrogation waiver is construed to apply to post-construction claims, it only bars claims for damage to the hotel building, but not claims for damages to furnishings or for business interruption losses.

A. Interpretation of the Waiver

Lafrance agreed to waive subrogation "on all property and consequential loss policies purchased for the Project after its substantial completion." Agreement, at ¶9.6.3. Opechee and Continental dispute the meaning of "Project." Continental argues that the policy covering the hotel at the time of the water damage was not "purchased for the Project" because the "Project" ended when Opechee finished the hotel and received

final payment. Under Continental's interpretation, the Waiver applies only to claims for losses covered by policies in effect between substantial completion and the final payment (while Opechee was working on the outstanding punch list items).

In response, Opechee argues that the term "Project" means the "tangible creation" of the work on the Project, existing after construction and including the completed hotel. Under Opechee's interpretation, the term "Project" contains no temporal limitation and, by extension, the Waiver applies to all policies covering the hotel after substantial completion and for the life of the hotel. Opechee also contends that Continental's interpretation of the Waiver is unreasonable because it would shift the risk of loss associated with construction to Lafrance's insurance carriers for only a short "gap" period, while Opechee's carriers would absorb that risk for nearly the entire construction schedule.

Under New Hampshire law,[1] the interpretation of a contract, including whether a contract term is ambiguous, is ultimately a

---

[1] Both Opechee and Continental cite New Hampshire law in their briefs, and the court "is free to honor [their] reasonable agreement regarding which state's law applies." OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012). Accordingly, the court will apply New Hampshire law.

question of law. Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010) (citing Behrens v. S.P. Constr. Co., 153 N.H. 498, 500 (2006). When interpreting a contract, the court must "give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." In re Liquidation of Home Ins. Co., 166 N.H. 84, 88 (2014) (internal quotations omitted). Absent ambiguity, however, "intent will be determined from the plain meaning of the language used in the contract." Id. (internal quotations omitted). "The language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language." Found. for Seacoast Health v. Hosp. Corp. of Am., 165 N.H. 168, 172 (2013) (quoting Birch Broad., 161 N.H. at 196).[2]

The Agreement defines the "Project" as the "total construction to be designed and constructed of which the Work is a part." Agreement, at ¶1.3. "Construction" is not defined in the Agreement. Because "construction" can commonly mean either

---

[2] To the extent Continental argues that the waiver cannot be enforced because it fails to meet the requirements of a valid exculpatory provision, that argument has been addressed and rejected by the New Hampshire Supreme Court. See Chadwick v. CSI, Ltd, 137 N.H. 515, 523-24 (1993).

7

a structure or the act or process of building a structure,[3] the phrase "total construction" does not lend itself to one plain meaning. The use of the modifying phrase "to be designed and constructed" suggests that the phrase "total construction" refers to the completed hotel. Structures are "designed and constructed." Conversely, the phrase "designed and constructed" makes little sense if the "total construction" is an act or process.

On the other hand, the first page of the Agreement describes the "Project" as the "[c]onstruction of a 93 unit Hampton Inn Hotel on an approximately 2.0 acre parcel of land at Hotel Drive in Dover, NH." The phrase "construction of" followed by a description of the hotel plainly refers to the act or process of building the hotel. It does not refer to a tangible creation as Opechee suggests. Thus the description on the cover page suggests that the "Project" is a process with a defined beginning and end point.

In addition, in some places, the Agreement refers to the "Project" as the process of building the hotel. See Agreement,

---

[3]See The American Heritage Dictionary of the English Language 395 (4th ed. 2000) (defining construction as "1 (a) The act or process of constructing, (b) The art, trade, or work of building . . . (2) A structure, such as a building, framework or model."); Sabinson v. Trustees of Dartmouth Coll., 160 N.H. 452, 458, 999 A.2d 380, 386 (2010) (using dictionary definition to determine the common and plain meaning of contract term).

at ¶10.1.1 (setting forth contingency plan for what happens if "the Project is stopped for a period of thirty (30) days . . . through no act or fault of the Contractor"). In other places, however, the Agreement refers to the "Project" as a building or structure. Agreement, at ¶ 2.2.4 ("At the completion of the Work, [the contractor] shall remove all of his waste material and rubbish from and around the Project . . . .") Given this duality, both Opechee and Continental have offered reasonable interpretations of the Waiver.

Opechee contends that Continental's interpretation of the Waiver is unreasonable in light of the Agreement's negotiated scheme to allocate insurance and risk. Opechee claims, and Continental does not dispute, that Paragraph 9.4.1 required Opechee to purchase insurance covering the Project until substantial completion. In Paragraph 9.6.1, Opechee waived subrogation on the insurance policy that it was required to purchase under Paragraph 9.4.1. Opechee argues that it is implausible that it would agree to bear the cost of shifting the risk of loss on the Project to its insurance carriers until substantial completion in exchange for Lafrance agreeing to waive subrogation for only a short gap period between substantial completion and final payment.

9

Opechee cites no language in the Agreement, however, that shows Lafrance and Continental intended to divide the burden of insurance evenly.  Negotiated insurance obligations and subrogation waivers may demonstrate a comprehensive plan for allocating the risk associated with building the hotel.  See Chadwick, 137 N.H. at 515.  It does not follow, however, that the only reasonable result of a negotiated and comprehensive allocation plan is a proportionate split in burden between Lafrance and Opechee.  This is particularly true where, as here, the parties negotiated a complex agreement with many interrelated provisions.

Opechee also argues that its interpretation is supported by several cases that have enforced subrogation waivers in the American Institute of Architects ("AIA") general conditions form to bar claims for post-construction losses.[4]  Opechee contends that the analysis of those cases is applicable and persuasive here because the AIA waivers contain "nearly identical" language to the Waiver.

The form AIA contract in the cases Opechee cites, however, contains two critical contractual provisions that distinguish it from the modified AGC waiver at issue here.  First, the form AIA

---

[4] The Agreement between Opechee and Lafrance, however, was a modified version of an AGC standard form contract.

10

contract contains a provision that expressly provides that the waiver applies to "the completed Project" and "after final payment."  See, e.g., Middleoak Ins. Co. v. Tri-State Sprinkler Corp., 931 N.E.2d 470, 471 (Mass. App. Ct. 2010).  Second, the form AIA contract makes it clear that the subject of the insurance policy being waived includes the completed construction and services.  See, e.g., Id.; Town of Silverton v. Phoenix Heat Source Sys., Inc., 948 P.2d 9, 13 (Colo. App. 1997).  Opechee has not cited comparable provisions in the Agreement.  For these reasons, the court declines to adopt the reasoning of cases interpreting the form AIA contract.  Because both Opechee and Continental provide reasonable interpretations the Waiver is ambiguous.

    B. Resolving the Ambiguity

When a court identifies an ambiguity in an agreement, it must determine under "an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean."  Found. for Seacoast Health, 165 N.H. at 172-73.  When applying this standard, the court "should examine the contract as a whole, the circumstances surrounding execution and the object intended by the agreement, while keeping in mind the goal of giving effect to the intentions of the parties."  Id.  As discussed above, because Opechee is the moving party on waiver,

11

the evidence that it presents must be conclusive to secure summary judgment. Union Independiente, 279 F.3d at 55.

Opechee has not met this standard. There is scant evidence in the record about Opechee's and Lafrance's intent concerning the Waiver. The only pertinent evidence is the Certificate of Substantial Completion. That document, when taken in the light most favorable to Continental, only shows that Lafrance became responsible for insuring the project at substantial completion. It does not explain the purpose of the post-substantial completion Waiver.

For this reason, a genuine issue of material fact still exists as to the waiver defense. Sunapee Difference, LLC v. State, 164 N.H. 778, 790 (2013) (resolving ambiguity in contract "necessarily involves factual findings . . . thus an argument between the parties about the meaning of an ambiguous contractual term is typically an argument about a material fact") (internal quotations omitted). Therefore, Opechee has not shown it is entitled to summary judgment based on the Waiver.

### C. Waiver Limited to Building Damage

Continental argues that even if the Waiver were construed to apply to post-construction losses, it still only bars claims for damage to the hotel building. Because Opechee has not shown

12

that the Waiver bars Continental's claims at this stage of the litigation, resolving Continental's alternative theory is unnecessary.

## Conclusion

For the reasons stated above, Opechee's motion for summary judgment (document no. 41) is denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

October 6, 2015

cc: John F. Brady, Esq.
Christie Burnett, Esq.
Doreen F. Connor, Esq.
Adams R. Mordecai, Esq.
Matthew D. Sweet, Esq.
Thomas J. Underwood, Jr., Esq.
James G. Walker, Esq.